IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

CINDY D. JOHNSON,

       Plaintiff,            NO. 2:17-cv-00022

vs.                            CHIEF JUDGE WAVERLY D. CRENSHAW, JR.
                                 Magistrate Judge Kemp

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

To: The Honorable Waverly D. Crenshaw, Jr., Chief Judge

## REPORT AND RECOMMENDATION

      This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) and 1383 to review a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income. Plaintiff filed a motion for judgment on the administrative record on June 27, 2017 (Doc. 16) and the Commissioner responded on July 25, 2017 (Doc. 17). Plaintiff filed a reply to the response on August 8. 2017 (Doc. 18). For the following reasons, it will be recommended that Plaintiff's motion be **DENIED** and that this action be **DISMISSED**.

### I. Background

      Plaintiff filed her application for benefits on March 12, 2013, asserting that she became disabled on October 19, 1996. Her onset date was later amended to the date of her application. On October 29, 2013, that application was denied, and Plaintiff's request for reconsideration was denied on January 31, 2014. She then asked for a hearing before an Administrative Law Judge (ALJ), and that hearing was held on September 14, 2015. Both Plaintiff and a vocational expert, Dr. J.D. Flynn, testified at the hearing.

      In a decision dated December 1, 2015, the ALJ determined that Plaintiff did not meet the requirements for disability. Plaintiff sought review of that decision from the Appeals Council, but her appeal was denied on January 27, 2017. The case is now before this Court to determine which party is entitled to judgment on the administrative record (Doc. 12).

## II. The Findings and Conclusions of the ALJ

In his decision, the ALJ made the following findings of fact and conclusions of law (with some legal references omitted):

    1. The claimant has not engaged in substantial gainful activity since March 12, 2013, the alleged onset date.

    2. The claimant has the following severe impairments: bilateral carpal tunnel syndrome; degenerative disc disease of the lumbar spine and cervical spine; left lower extremity radiculopathy; and obesity.

    3. The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can sit four hours total in a day, stand four hours total in a day, and walk four hours in a day. The claimant can perform no pushing of leg controls with the left lower extremity.

    5. The claimant is unable to perform any past relevant work.

    6. The claimant was born on January 1, 1962 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed.

    7. The claimant has at least a high school education and is able to communicate in English.

    8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

    9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    10. The claimant has not been under a disability, as defined in the Social Security Act, since March 12, 2013, the date the application was filed.

### III. Plaintiff's Claims

Plaintiff asserts the following statement of errors;

1. The ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to give Plaintiff's treating physician, Dr. Cummings controlling weight..

2. The Step 5 determination was unsupported by substantial evidence.

Memorandum in support, Doc. 16, at 6.

### IV. Standard of Review

This Court has set forth the applicable standard of review in this fashion:

> This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means " 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id*. (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.,* 644 Fed.Appx. 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).
>
> Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

*Allen v. Berryhill*, 273 F. Supp. 3d 763, 770 (M.D. Tenn. 2017)

### V. Summary and ALJ's Evaluation of Relevant Evidence

## A. Hearing Testimony

Plaintiff testified at the administrative hearing that she was 53 years old and had her GED. She lived with her disabled husband and cared for her granddaughter three times per week. She had worked in the past at a sewing factory but left that job due to carpal tunnel syndrome. In the last fifteen years, she had also worked doing live-in care for an elderly gentleman, a job she held for three years until he passed away.

Plaintiff also testified about her medical problems. Carpal tunnel syndrome was her main complaint, with her right hand worse than her left. She had not had surgery to correct the problem due to lack of insurance. She also said she had a ruptured disc in her neck which caused numbness in her arm, had undergone back surgery, and suffered from swelling in her leg where she had had a blood clot. She took medication for her nerves s well.

Plaintiff said that she had problems with dropping objects and could only lift about eight pounds. She could only stand for about fifteen minutes at a time and walk half a block. Prolonged sitting caused muscle cramps in her back. Lastly, her medication caused side effects like fatigue and dizziness.

The vocational expert, Dr. Flynn,, was first asked to identify Plaintiff's past relevant work. He said she had been a tacking-machine operator and a home attendant. These jobs were either light or medium in exertion. The first was unskilled, the second semi-skilled.

Dr. Flynn was then asked about a person who had the capacity to sit for four hours a day, stand for four hours, and walk for four hours. The person could not push leg controls with his or her left leg. He testified that such a person could not do any of Plaintiff's past work. However, that person could perform some light unskilled jobs like dining room and cafeteria attendant, usher, lobby attendant or ticket taker, and office machine operator. Dr. Flynn also gave numbers for those jobs as they exist in the national economy. Someone who could perform fine or gross manipulation on only an occasional basis could still do those jobs, but someone who could not sit, stand, and walk for a combined total of eight hours in a work day could not.

Plaintiff's counsel then asked several questions of Dr. Flynn. In response, he testified that someone who could do only occasional handling (as opposed to manipulation) was not employable, but that the jobs he identified did not require much manipulation as that term is usually understood in the vocational setting.

## B. Medical Evidence

Plaintiff's Statement of Errors focuses primarily on the opinion of Dr. Cummings, her long-time (approximately 30 years) treating physician. The Court will review Dr. Cummings' examinations and findings at some length, particularly the ones that were made at or around the time when she asserted her disability began.

-4-

By 2006, Dr. Cummings was treating Plaintiff for a ruptured cervical disc and had prescribed, among other medications, hydrocodone and Flexeril. She was also reporting tenderness in the lumbar area. (Tr. 521). An examination done in 2007 showed normal muscle strength and range of motion, however. (Tr. 506). Another note from that year indicates a ruptured disk in the lower back. (Tr. 505). Despite that diagnosis, exams from 2008 and 2009 continued to show no abnormalities in strength or range of motion of the low back. Some low back tenderness was noted in 2010, but her reflexes, gross sensation, and movements were within normal limits. (Tr. 487). Notes from 2011 indicated full range of motion in all joints with no pain, crepitance, tenderness, swelling, or warmth, and no muscular atrophy or weakness. (Tr. 467). She did report neck pain in 2011.

Dr. Cummings also treated Plaintiff for generalized anxiety disorder in 2012.. He prescribed Ativan for that condition. (Tr. 425). Despite her neck pain, Plaintiff still had a full range of motion in the neck. A note from 2014 indicates she was still taking Ativan, and she had been prescribed Flexeril again as well as Percocet. (Tr. 421-24). In late 2014, Plaintiff began reporting left knee pain, which is described in the treatment note as osteoarthrosis. (Tr. 405-07). She also reported right shoulder pain. The notes indicate referral to a pain clinic. (Tr. 404). The last treatment note from Dr. Cummings is dated June 24, 2015, and is similar to the others, indicating that Plaintiff was being seen for follow-up for arthritis and generalized aching. She did not report any anxiety, depression, agitation or restlessness. She had full range of motion of the neck but reported neck pain. Her strength was normal. Dr. Cummings' clinical impression was osteoarthritis. (Tr. 383-85).

Dr. Cummings filled out a "Doctor's Checklist for Functional Impairment" on March 27, 2014. On the two-page form, he stated that Plaintiff could sit, stand, or walk for only thirty minutes at a time, could lift only a gallon of milk, could pull and push only 8-10 pounds, and was limited in her ability to stoop, climb, balance, reach, handle, and perform fine manipulation. He did not believe Plaintiff had any specific psychiatric limitations but said that her symptoms would interfere with the completion of a normal work day and work week without an unreasonable number of rest periods. (Tr. 381-82).

The only other significant treatment records relate to Plaintiff's complaint of wrist pain. She was seen by a different doctor for that problem, and the notes indicate that although an EMG was negative, it was likely that Plaintiff had carpal tunnel syndrome. It was recommended that she not go back to the sewing factory or do any other type of repetitive work. (Tr. 322-32).

The consultative examiner in this case was Dr. Stacy Dorris. Dr. Dorris saw Plaintiff on September 9, 2013. At that time, Plaintiff reported "facet arthritis with minimal degenerative disc, edema, ruptured disc in neck and back, carpal tunnel in both hands." She said she had been told that she had a ruptured disc and a cracked vertebra. At the time of the examination, she was taking pain medication only occasionally, and said that walking helped her back and neck. Plaintiff also reported a diagnosis of carpal tunnel syndrome in 2011 and said she wore braces at night.

Dr. Dorris's examination notes state that Plaintiff had a full range of motion in her neck and in all her other joints except the left knee. She did have some pain on flexion of the wrists. She could perform both fine manipulation and gross dextrous maneuvers. Plaintiff also had some slight limitation of motion in her back with tenderness but without muscle spasm. She could walk without assistance and her grip strength was within normal limits. Dr. Dorris's clinical impression was chronic cervicalgia and lumbago status post lower back surgery in 1999 and bilateral wrist pain. Dr. Dorris concluded that Plaintiff could sit, stand, and walk for four hours at a time and up to six hours total in a work day, could lift and carry twenty pounds occasionally and ten pounds frequently, and should not work around heights or operate heavy machinery. (Tr. 354-57).

### C. The ALJ's Decision

After making his findings concerning Plaintiff's severe impairments - which, again, were bilateral carpal tunnel syndrome, degenerative disc disease of the lumbar spine and cervical spine, left lower extremity radiculopathy, and obesity - and after determining that they were not of Listing severity, the ALJ began his analysis of the testimony and medical evidence relating to Plaintiff's residual functional capacity. He determined that Plaintiff's testimony and statements about the severity of her impairments was not entirely credible, based upon the lack of objective support for her claims, the fact that she was receiving only conservative medical treatment, certain inconsistencies between her statements to physicians and her testimony, and the fact that she engaged in a fairly wide range of daily activities. Her sporadic work history was also a factor in the ALJ's credibility analysis. Plaintiff's statement of errors does not dispute the ALJ's credibility finding.

As to the medical evidence, the ALJ gave great weight to Dr. Dorris's opinion. He noted that Dr. Dorris is an orthopedic specialist and that her opinions were supported by her examination findings. (Tr. 20). He then analyzed Dr. Cummings' report and stated the following reasons for giving it only "little weight": that most of the limitations Dr. Cummings expressed were "vague," and the ones he did express more specifically were not supported by his treatment records. According to the ALJ, "the medical evidence of record includes very few findings supporting any symptoms or limitations and no findings supporting extreme, disabling symptoms and limitations." (Tr. 20). The ALJ also gave some weight to the opinions of the state agency reviewers, both of whom concluded that Plaintiff could do a range of medium work, but he gave more weight to Dr. Dorris's opinion because it was based on an examination of the Plaintiff. *Id*.

### VI. Discussion

Plaintiff's first statement of error addresses the ALJ's decision to give the most weight to Dr. Dorris's opinion and to discount the conclusions reached by her treating physician, Dr. Cummings. She contends that Dr. Cummings' opinion should have been given either controlling

-6-

or substantial weight due to the long-standing treating relationship. Citing to the six factors to weighed under 20 C.F.R. §416.927(c), Plaintiff argues that Dr. Cummings' notes provide the type of detailed and longitudinal picture favored by the applicable regulation. She also asserts that it was not proper for the ALJ to reject Dr. Cummings' opinion as to her physical capacity as vague because that is not an accurate characterization of the record, and that the ALJ was simply incorrect when he found that Dr. Cummings' opinion was not supported by the medical evidence. She cites to multiple references in his notes showing that she complained of pain and that many examination findings were positive. Her second statement of error is entirely derivative of her first and need not be addressed separately.

The Commissioner makes a two-fold response to Plaintiff's arguments. First, the Commissioner notes that some of Dr. Cummings' findings of limitations - such as those relating to Plaintiff's ability to stoop, climb, reach, handle, finger, feel, and be exposed to environmental hazards - were vague because Dr. Cummings did not specify to what extent Plaintiff retained the ability to do those things. This argument is correct as far as it goes, but the work-preclusive limitations expressed by Dr. Cummings are not vague; he explicitly limited Plaintiff to an amount of sitting, standing, and walking which, as the vocational expert testified, would preclude her from being employed.

Next, the Commissioner defends the ALJ's conclusion that these latter limitations are not supported by the medical evidence. The Commissioner argues that the ALJ could properly have determined that examination notes showing normal gait, full strength, intact sensation, and full range of motion are inconsistent with extreme limitations on the ability to do work-related activities like sitting, standing, and walking. The Commissioner also points out that the record of routine and conservative treatment belies any finding that Plaintiff was so severely limited as to be unable to do even light work activity.

Plaintiff alleges a violation of the "treating source" rule found in 20 C.F.R. §416.927(c). As this Court has explained,

> The opinion of an examining non-treating source is given greater weight than that from a non-examining source and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data. *Jones* [*v. Comm'r of Social Security*], 336 F.3d [469 (6th Cir. 2003)], at 477 (citation omitted). Thus, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.' " *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). "Moreover, when the physician is a specialist with respect to the medical condition at issue,"

the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527( [c] )(5)).

"If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones*, 336 F.3d at 477. The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Blakley*, 581 F.3d at 406–07 (6th Cir. 2009) (quoting SSR 96–2p, 1996 WL 374188, at *5).

*Mcwhorter v. Berryhill*, 2017 WL 1364678, at *8–9 (M.D. Tenn. Apr. 14, 2017). It is true that "[a]n ALJ need not articulate a factor-by-factor analysis of a non-controlling treating source opinion" such a failure can be excused only if "the ALJ actually considers the listed factors and provides 'good reasons' for the weight given to the opinion." *Williams-Lester v. Soc. Sec. Admin.*, 2016 WL 4442797, at *25 (M.D. Tenn. Aug. 18, 2016).

Here, the reason given by the ALJ for discounting those of Dr. Cummings' opinions which, if accepted, would have led to a finding of disability, was that none of the voluminous medical records appear to support such restrictions. That is, if supported by substantial evidence, a valid basis upon which to discount the views of a treating physician. *See Jones, supra*. The ALJ conducted a thorough review of the relevant treatment notes and, as the Court's own review also indicates, the notes contain few actual objective findings of severe symptoms. Dr. Cummings did not order many tests like X-rays or MRIs, and when he did a physical examination of Plaintiff (which he did on many occasions, since he saw her as often as once a month during the relevant time frame), he did not note any significant physical abnormalities, nor did he report symptoms like abnormal reflexes, decreased muscle strength, limitation of range of motion, atrophy, or other matters normally associated with debilitating pain or extreme restrictions on the ability to perform basic activities like sitting, standing, walking, lifting, or carrying. Given this history, Dr. Dorris's examination simply confirmed the ALJ's conclusion that examination findings were essentially normal, and consistent with the ability to do a range of light work with some restrictions. The opinions of the state agency reviewers, who had access to Dr. Cummings' treatment notes, provide additional confirmation, because both of them saw nothing in those notes which would be inconsistent with the ability to do medium work. Consequently, the ALJ both articulated a reason for discounting Dr. Cummings' opinions which is permitted by the applicable regulation, and he had a reasonable basis for reaching his conclusion. Under these circumstances, which include a proper application of the "treating physician" rule, it is not for the Court to second-guess the ALJ's resolution of the conflicting medical evidence. *See, e.g., Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir.

2004). Consequently, the Commissioner's decision denying benefits should be affirmed.

### VII. Recommendation

For all the reasons set forth above, the Court **RECOMMENDS** that the Motion for Judgment (Doc. 16) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, and that this case be **DISMISSED**.

### VIII. Procedure on Objection

If any party seeks review of this Report and Recommendation by the assigned District Judge, that party may, within 14 days, file and serve on all parties written objections to the Report and Recommendation which specifically identify the part of the Report to which objection is made as well as the reasons supporting that objection. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b). Any response must be filed withing 14 days thereafter. Failure to object to a Report and Recommendation waives any right to obtain *de novo* review by the District Judge and waives any issues that might otherwise be raised on appeal. *See, e.g., Robert v. Tesson,* 507 F.3d 981,994 (6th Cir. 2007)

/s/ Terence P. Kemp
United States Magistrate Judge